BEAN et al. v. TRUST CO. OF AMERICA.

(Supreme Court, Appellate Division, Third Department. December 30, 1909.)

1. CONTRACTS (§ 275*)—CONTRACT TO BID—PERFORMANCE.

One contracting to bid at any mortgage foreclosure sale that may be ordered, and to become the purchaser of the property, if the same can be purchased at a reasonable figure, reserving to himself the unrestricted right to determine the amount of the maximum bid, is the absolute judge of what is a reasonable figure, and, where the bid of another equals or exceeds what he deems the reasonable value of the property, he need not raise the bid, provided his determination is not made capriciously or in bad faith.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1207; Dec. Dig. § 275.*]

2. CONTRACTS (§ 217*)—FORECLOSURE SALE—CONTRACT TO BID—PERFORMANCE.

A contract, binding a trust company to bid at any mortgage foreclosure sale of the property of a railroad and to become a purchaser, stipulated that the agreement should continue until a contemplated plan of reorganization of the railroad should be carried out, or until it became apparent to the trust company in its unrestricted discretion that the plan could not be carried out. At the time the contract was signed, or soon thereafter, and pursuant thereto, there was transferred, as further security for moneys advanced and to be advanced by the trust company, preferred claims against the railroad and also the capital stock of a newly organized corporation. The claims had been purchased and the newly organized corporation had been developed by moneys advanced by the trust company, and it was threatening a sale of the securities for the moneys already advanced, and which the reorganization committee of the railroad could not pay. Part of the consideration of the contract was the agreement by the trust company to withhold a sale of the securities. An agreement to withdraw a pending appeal was also a part of the consideration. *Held*, that the trust company could elect to abandon the plan of reorganization contemplated by the parties without restoring to the reorganization committee the property that had been handed over at the time of the making of the contract, as it could not have been contemplated by the parties that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

.the trust company should put the reorganization committee in statu quo on abandonment of the plan of reorganization.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1006; Dec. Dig. § 217.*]

3. CONTRACTS (§ 73*)—CONSIDERATION—SUFFICIENCY.

An agreement by one to withhold from sale securities held by him to secure claims due him is a sufficient consideration for a contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 326; Dec. Dig. § 73.*]

4. CONTRACTS (§ 217*)—AGREEMENT TO BID AT FORECLOSURE—TERMINATION OF CONTRACT.

A trust company contracted with the reorganization committee of a railroad to become a bidder at any mortgage foreclosure sale of the property of the railroad and to become a purchaser thereof if the same could be purchased at a reasonable figure. A third person became the purchaser, and the trust company procured from him an option on the property which it offered to the reorganization committee, together with all the securities held by the trust company on the payment of the amount bid by the third person, together with advances previously made by the trust company. *Held*, that the failure of the reorganization committee to accept the offer relieved the trust company from further obligation under the contract, though it was guilty of breach of faith in allowing the third person to become the purchaser.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1006; Dec. Dig. § 217.*]

Appeal from Special Term, Otsego County.

Action by Henry Willard Bean and others, as reorganization committee of the Oneonta, Cooperstown & Richfield Springs Railway Company, against the Trust Company of America. From an order vacating in part a preliminary injunction, plaintiffs appeal. Affirmed.

This action is brought to construe a trust deed executed between the parties hereto upon April 7, 1906, and to enjoin the defendant from doing anything in violation of what is claimed to be its trust obligation, and to compel the return to the plaintiffs of certain property if the trust shall be declared by the court to have, been terminated. The plaintiffs are a committee of a majority of the first mortgage bondholders of the Oneonta, Cooperstown & Richfield Springs Railway Company. Upon the foreclosure of that mortgage the property was bid in by the Oneonta & Mohawk Valley Railroad Company, which was a corporation organized for the purpose of taking said property by this committee. The amount bid was $900,000. The property was taken subject to the prior lien, if any, of receiver's certificates aggregating $250,000, which had been issued by the receiver under the order of the court prior to the sale in foreclosure. These receiver's certificates were held by the Rochester Trust Company and amounted, with interest, to about $325,000. After the foreclosure these certificates were sought to be foreclosed by the Rochester Trust Company, which procured a judgment of foreclosure from the Special Term, which judgment was affirmed in this court. Rochester Trust & Deposit Co. v. Oneonta, C. & R. S. R. Co., 122 App. Div. 193, 107 N. Y. Supp. 237. An appeal was then taken to the Court of Appeals. After the Oneonta & Mohawk Valley Railroad Company had bid off this property and taken possession, nearly $200,000 was expended in additional rights of way and in betterments to the road, and nearly $300,000 in the acquirement of a water power at Colliers, which is called the "Hydro-electric plant." Also preferred claims against the company had been purchased by the committee to the amount of $31,000. Neither these preferred claims nor the title deeds of the Hydro-electric Company had ever been transferred to the defendant, although the defendant furnished the consideration therefor. In this situation it apparently

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

occurred to the Oneonta & Mohawk Valley Railroad Company that their bid for the property was too large, and they failed to complete their bid and entered into the agreement of April 7, 1906, which is the agreement here sought to have construed. This agreement recites: The appointment of the plaintiffs as committee of the first mortgage bondholders for the Oneonta, Cooperstown & Richfield Springs Railway Company; that the said bondholders have borrowed from the Colonial Trust Company, which is the predecessor of the defendant and legally identical therewith, the sum of $554,500 and had made further advances of $18,457.15; that for the purpose of securing the said moneys so borrowed the said committee had deposited with the said trust company 17,850 shares of the capital stock and $1,300,000 par value of the bonds of the Oneonta & Mohawk Valley Railroad Company. It recites default in the payment of said loans and proper demand, and the request by the committee not to foreclose its lien upon the pledged securities, and contains the following obligations:

First. The property of the Hydro-electric Company should be transferred to a corporation to be organized to be called the "Susquehanna River Power Company," for which the committee were to receive $200,000 par value of full-paid capital stock of said power company.

Second. The stock so issued should be delivered to the defendants as additional security for the loans already made and for those to be made under the agreement.

Third. The trust company was given the power of ownership over said stock for any necessary purpose.

Fourth. If, in its unrestricted discretion, such course should be necessary and advisable, the trust company should use its best efforts to procure a sale of the property and franchises of the Oneonta & Mohawk Valley Railroad Company, either under the judgment of foreclosure and sale obtained in the pending action wherein Knickerbocker Trust Company, trustee, was plaintiff, and the Oneonta, Cooperstown & Richfield Springs Railway Company and others were defendants, or under the judgment and foreclosure and sale in the pending action wherein the Rochester Trust Company was plaintiff and the Oneonta & Mohawk Valley Railroad Company and others were defendants, or under both of said judgments; "the trust company reserving to itself the exclusive right to determine, under the advice of counsel, which method of procedure shall be adopted, the most effective method for carrying out any method of procedure that may be adopted, or the alternative right to proceed without a sale under paragraph ninth hereof, or in accordance with any other plan which may in the discretion of the trust company be deemed necessary or advisable."

Fifth. For the purpose of carrying out the agreement it was provided that the committee should procure a substitution of counsel in the Rochester Trust Company case, or in the alternative a withdrawal of the appeal to the Court of Appeals from the judgment entered in said action.

Sixth. The provision was therein made for the transfer to the company of $31,240.17 of preferred claims theretofore purchased by the defendant.

Seventh. "The trust company undertakes to become a bidder at any sale of the property, that may be ordered, and to become the purchaser of the property, if the same can be purchased at a reasonable figure, the trust company reserving to itself the unrestricted right to determine the amount of the maximum bid to be made by it."

Eighth. Provision was made in case of purchase for a mortgage to be issued upon the Susquehanna Power Company for the purpose of paying the Rochester Trust Company.

The ninth, tenth, eleventh, and twelfth paragraphs provide for a contingency of a reorganization and the details for action thereupon. The thirteenth paragraph reads as follows:

"This agreement shall continue in full force and effect until the plan of reorganization herein contemplated shall have been carried out, or until it shall become apparent to the trust company, in its unrestricted discretion, that the plan of reorganization herein contemplated cannot be carried out, in which event the trust company shall give the committee thirty days' written notice, that it intends to abandon the plan of reorganization, and at the expiration of

thirty days after said written notice shall have been given the parties hereto shall be relegated to their present respective positions of pledgors and pledgees."

Thereafter the defendant purchased the Rochester Trust Company judgment for upwards of $300,000. The title deeds of the Hydro-electric Company were held by the First National Bank of Cooperstown as collateral to a note of upwards of $18,000. This note was paid. The Susquehanna River Power Company was formed. Stock issued to the committee, and the committee transferred the stock to this defendant in pursuance of the aforesaid agreement. $100,000 was paid out for the purchase of additional rights of flowage incidental to the Hydro-electric plant, and for the purchase of the pole line connecting said plant with the said railroad, so that this defendant had advanced upon these properties about one million dollars. Default having been made in the completion of the bid of the Oneonta & Mohawk Valley Railroad Company, the defendant under the power contained in this contract chose to allow a resale of the property under the original foreclosure judgment obtained by the Knickerbocker Trust Company. Under the terms of the original sale the property could not be bid except at a minimum bid of $200,-000. Upon that resale the property was purchased by one Starrett, who represented in fact the minority bondholders, while the plaintiff as the committee represented the majority bondholders under the first mortgage bonds secured by the mortgage to the Knickerbocker Trust Company. Thereafter the defendant gave notice to the committee under subdivision 13 of the aforesaid agreement that it intended to abandon the plan of reorganization. This notice was dated March 2, 1909. To this the committee responded, protesting that the defendant had no right to abandon the plan of reorganization without the return of the securities which were received at the time of the making of the contract. This action was then brought, and a preliminary injunction granted by Mr. Justice Lyon, as before stated. Thereafter, and in June, 1909, the defendant served its answer. As a separate defense in that answer it alleged that on the 25th of May, 1909, the defendant obtained an option to purchase the property of the Oneonta, Cooperstown & Richfield Springs Railway Company bid in by a certain Starrett at a resale thereof held at the village of Cooperstown in the county of Otsego on the 3d day of October, 1908, and granted to the plaintiff the option to acquire said property as well as the property covered by the mortgage of the Oneonta & Mohawk Valley Railroad Company and the Hydro-electric Development at Colliers, at any time within 90 days from the 1st day of June, 1909, at and for a sum equal to the face amount of the said Starrett's bid, plus the amount of the advances made to the plaintiffs or to be made to the plaintiffs by the defendant, together with interest thereon at the rate of 6 per cent. per annum from the dates of the several advances, and the defendant further offered to loan to the plaintiffs the money necessary to exercise said option upon the terms of a certain letter theretofore sent of April 9, 1908. This option was declined. After the service of said answer, application was made to modify the preliminary injunction, and the same was modified by permitting the sale of the stock and bonds of the Oneonta & Mohawk Valley Railroad Company. It is from this order of modification that the appeal is taken.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Julius Henry Cohen, for appellants.
J. Markham Marshall, for respondent.

SMITH, P. J. The first question that arises is as to the duty of the defendant to bid at the resale under the judgment of the Knickerbocker Trust Company. The only bid there made was by Starrett, who bid the minimum sum of $200,000. The plaintiff contends that under the seventh clause of this agreement the trust company undertook to become a bidder at any sale of the property that should be made. But

that agreement was qualified by the provision "if the same can be purchased at a reasonable figure," and in that clause it was provided that the trust company "reserved to itself the unrestricted right to determine the amount of the maximum bid to be made." I have no doubt that this reservation, read in connection with the agreement to bid, makes the defendant the absolute judge of what should be "a reasonable figure." If the first bid upon the sale should be equal to or in excess of what the defendant deemed the reasonable value of the property, the defendant would not be required to raise the bid, because the contract gave to the defendant the right to determine what should be the maximum bid or what was the reasonable value of the property. It is undoubtedly true that this determination cannot be made by the defendant capriciously or in bad faith. I find no facts, however, recited sufficient to overcome the presumed finding of the Special Term of the defendant's good faith in making its determination. The property was sold subject to the lien of the Rochester Trust Company judgment, upon which there was due upwards of $325,000. There was reserved from the sale about $200,000 worth of property which had been added to the road by the Oneonta & Mohawk Valley Railroad Company, and which it was claimed was not subject to the lien of the Knickerbocker Trust Company mortgage. The defendant itself was largely interested in the sale, as it had already a million dollars of advancements in that property and in the Hydro-electric plant, which furnished the power to run the road. We are of opinion therefore that the defendant did not violate its agreement in failing to become a bidder at the resale, whereupon the property was bought by Starrett.

With the property of the Oneonta, Cooperstown & Richfield Springs Railway Company in the hands of Starrett, a third party, all that remained which would give value to the stock and bonds of the Oneonta & Mohawk Valley Railroad Company was this $200,000 worth of property which had been added to the original railroad property, and which was claimed not to have been covered by the lien of the Knickerbocker Trust Company mortgage. In addition to that, the defendant had about $31,000 of preferred claims and the stock of the Susquehanna River Electric Company to cover advances of about $700,000. While it had purchased the Rochester Trust Company judgment, that judgment was still a lien upon the railroad property in the hands of Starrett. The defendant therefore could have carried out its plan of reorganization by another sale under the Rochester Trust Company judgment. This it is claimed it was its duty to do under the agreement. Instead of so doing, the defendant chose under the thirteenth provision of the contract in its unrestricted discretion to abandon the scheme of reorganization which it had the clear right to do. It is contended by the plaintiff that this plan of reorganization could not be abandoned without a restitution to the plaintiff of all property that had been handed over at the time of the making of the contract. I cannot so read the contract. At the time the contract was signed, or soon thereafter, and pursuant thereto, there was transferred as further security for the moneys theretofore advanced and thereafter to be advanced about $31,00 in preferred claims against the railroad company, and

also all the capital stock of the Susquehanna River Power Company. But these preferred claims had been purchased and the Susquehanna River Power Company had been constituted and developed by moneys advanced by the defendant. The defendant was threatening a sale of the securities for the moneys already advanced and which the plaintiffs could not pay. Part of the consideration of the contract was the agreement by the defendant to withhold a sale of those securities. There is nothing therefore in the nature of the consideration given for the making of this contract which would lead the court to infer that upon the exercise of the right of abandonment given by the thirteenth provision thereof the defendant was required to return any of this property to the plaintiffs. It is true that the appeal taken in the Rochester Trust Company judgment was withdrawn. Whatever certainty or doubt there may have been attached to that judgment, the right of appeal was a substantial right, and there was therefore substantial value surrendered by the plaintiffs in their agreement to withdraw that appeal. As to this, however, it is impossible for the defendant to put the plaintiffs in statu quo upon the abandonment of the plan of reorganization; and it could not have been so contemplated by the parties in the making of the contract. To hold that such was necessary to the right of abandonment would practically defeat the right of abandonment expressly stipulated for in the contract. The agreement of the defendant to withhold from sale the securities then held was a sufficient consideration for whatever contract the plaintiffs might choose to enter upon. If the contract be a favorable one to the defendant, it was nevertheless understandingly made by the plaintiffs, who apparently were helpless to extricate themselves from their dilemma and trusted to the defendant's good faith.

It is undoubtedly true that under this agreement of April 7th the defendant assumed toward the plaintiffs a trust relation. In the execution of that trust the utmost good faith was required on its part. If we assume for the argument that the defendant could not refrain from bidding upon this resale without giving notice to the plaintiffs that they might bid, and that the defendant was guilty of a breach of faith in allowing Starrett to become a purchaser thereupon, the defendant has clearly atoned for its wrong by procuring from Starrett an option upon the property and by offering that option and all the security held by the defendant upon payment of the amount bid by Starrett together with the advances theretofore made by the defendant. With the right of abandonment stipulated in the contract they clearly could have purchased the property and then have abandoned the scheme of reorganization. If they had sought to purchase the property, the price would have been run up by Starrett, and the offer of the option therefore at the minimum price bid by Starrett is certainly as favorable a proposition as the plaintiffs could ask. The plaintiffs can ask nothing more except upon the theory of an implied agreement on the part of the trust company to make sufficient advances to perfect some plan of reorganization. This the defendant has nowhere agreed to do, but has carefully stipulated that it should be left free to exercise its judgment and discretion as to how far it would go looking to a reorganization of the properties. The plaintiffs were given

90 days in which to accept the defendant's proposition. Their failure to accept the same relieves the defendant from further obligation under the agreement and leaves the defendant free to sell the collateral which it held pledged for advances made. We find no reason therefore for interfering with the discretion of the learned judge in modifying the injunction, and the order should be affirmed, with $10 costs and disbursements.

Order affirmed, with $10 costs and disbursements. All concur.